## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTOINE M. BLACK,** | : | **CIVIL ACTION NO. 1:11-CV-1912** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE CITY OF HARRISBURG,** | : | |
| **PENNSYLVANIA, by the** | : | |
| **HARRISBURG CITY POLICE** | : | |
| **DEPARTMENT, and DETECTIVE** | : | |
| **DONALD HEFFNER including** | : | |
| **UNKNOWN POLICE OFFICERS,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

Plaintiff Antoine M. Black ("Black") filed the above-captioned action for civil

rights violations pursuant to 42 U.S.C. §§ 1981 and 1983.  Presently before the court

is a motion to dismiss (Doc. 15), filed by defendants City of Harrisburg, on behalf of

the Harrisburg City Police Department, and Detective Donald Heffner.  For the

reasons that follow, the court will grant the motion.

## I.    Factual and Procedural Background

The instant motion to dismiss comes before the court pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Accordingly, the court will "accept all well-pleaded

facts in the complaint as true and view them in the light most favorable" to the

plaintiff.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

Black is an adult male who, at all times relevant to the complaint, resided in

Harrisburg, Pennsylvania.  (Doc. 1 ¶ 5).  Defendant Donald Heffner is a detective

with the Harrisburg City Police Department ("Police Department"). (Id. ¶ 7). Black alleges that, on August 17, 2010, Detective Heffner and other unknown police officers of the Police Department conducted an illegal search and seizure at Black's residence. (Id. ¶¶ 6, 8).

On August 3, 2010, Probation Officer Jenkins reported a stolen 0.45-caliber Sigsaur handgun. (Id. ¶ 9). On August 16, 2010, Detective Heffner interviewed Brittany Harris, who claimed to be aware of the stolen handgun from media reports. (Id. ¶¶ 10-11). Ms. Harris allegedly informed Detective Heffner that she overheard Black attempting to sell a gun that matched the description of the missing handgun. (Id. ¶ 13). Ms. Harris also allegedly possessed personal knowledge about Black, including Black's birth date and the birth date of his son, his address, and his living arrangements. (Id. ¶ 12).

Relying in substantial part upon the information he received from Ms. Harris, Detective Heffner submitted an application for a search warrant, including an Affidavit of Probable Cause, to a neutral magistrate. (Id. ¶ 7). The Affidavit of Probable Cause states that the Police Department expected a search of Black's residence to produce evidence of stolen government-issued equipment. (Id. ¶ 15). On August 17, 2010, members of the Police Department executed the search warrant at Black's residence. (Id. ¶ 14). The search produced no evidence of the stolen materials; however, the police officers seized currency in the amount of $13,940 from a purse within the home, and $29,000 found in a Tastycake box on the third floor of the residence. (Id. ¶¶ 16-17). Black was not arrested and no charges

were filed against him related to the search.  (Id. ¶ 18).  Defendants placed the

seized currency, totaling $42,940, into evidence.  (Id. ¶ 19).  On March 10, 2011,

Black received $28,980 of the seized currency when he objected to a forfeiture

proceeding initiated by the Dauphin County District Attorney's Office.  (Id. ¶ 20).

According to the complaint, a state court replevin action over the balance of the

seized funds is pending.  (Id. ¶ 25).

On October 17, 2011, Black filed the complaint (Doc. 1) against defendants

City of Harrisburg (the "City"), by and through the Police Department, and

Detective Heffner for civil rights violations pursuant to 42 U.S.C. §§ 1981 and 1983.

(Id. ¶ 22).  Specifically, Black alleged that, while acting under color of state law,

defendants executed a search warrant without probable cause and illegally seized a

large amount of currency.  (Id.)  Thus, defendants violated Black's rights under the

First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments to the U.S.

Constitution, as well as Sections 8 and 9 of Article I of the Pennsylvania

Constitution.  (Id. ¶¶ 22, 30).  On December 13, 2012, defendants filed the instant

motion to dismiss (Doc. 15) pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief may be granted.  Black subsequently

waived his claims regarding violations of the First, Fifth, and Thirteenth

Amendments to the U.S. Constitution, as well as Sections 8 and 9 of Article I of the

Pennsylvania Constitution.  (Doc. 36 at 2).  Thus, the court must resolve whether

Black sufficiently alleges claims under 42 U.S.C. § 1983 for: (1) municipal liability

under Monell v. Department of Social Services of the City of New York, 436 U.S. 658

(1978), (2) unlawful search and seizure in violation of the Fourth Amendment, and (3) deprivation of property without due process of law in violation of the Fourteenth Amendment. The motion is fully briefed and ripe for disposition.[1]

## II. <u>Jurisdiction and Legal Standard</u>

The court has jurisdiction over the instant matter because the complaint presents a question of federal law. <u>See</u> 28 U.S.C. § 1331. Black alleges that defendants deprived him of his constitutional rights under color of state law. <u>See</u> 28 U.S.C. § 1343(a)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

---

[1] The court notes that the procedural delay in resolution of defendants' motion to dismiss (Doc. 15) was occasioned by the unexpected death of Black's counsel, Robert S. Mirin, after the filing of the complaint. Through letter correspondence, Black notified the court that he would proceed *pro se* because he was having difficulty securing replacement counsel. (Docs. 5, 6, 8). After defendants filed the instant motion to dismiss (Doc. 15), Black filed a motion for leave to proceed *in forma pauperis* (Doc. 19) and a motion to appoint counsel (Doc. 21). The court found that serious obstacles exist as to Black's ability to present his case, and his claims have at least arguable support in fact and law. (Doc. 25 at 5-8). On May 14, 2013, the court ordered that Black be conditionally appointed counsel in accordance with the court's Pro Bono Attorney program. (Doc. 25). On September 17, 2013, Vincent Monfredo graciously volunteered to represent Black and entered his appearance before the court on behalf of Black. (Doc. 29).

entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d

Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008));

see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v.

Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)). To test the sufficiency of the complaint, the court must conduct a three-

step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the

factual and legal elements of a claim should be separated; well-pleaded facts must

be accepted as true, while mere legal conclusions may be disregarded. Id.; see also

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court

isolates the well-pleaded factual allegations, it must determine whether they are

sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing

Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege

facts sufficient to "raise a right to relief above the speculative level"). A claim "has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie*

case of liability, courts should generally grant leave to amend before dismissing a

complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002);

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III.  **Discussion**

Section 1983 of Title 42 of the United States Code provides a cause of action

to redress violations of federal law committed by state officials.  See 42 U.S.C.

§ 1983.  Section 1983 is not a source of substantive rights, but merely a method for

vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe,

536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To

establish a claim under section 1983, the plaintiff must show a deprivation of a

"right secured by the Constitution and the laws of the United States . . . by a person

acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough

of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Defendants do not dispute Black's

contention that, at all times relevant to the complaint, they were "acting under

color of state law."  (Doc. 1 ¶¶ 7-8).

In the case *sub judice*, Black alleges that defendants violated his rights under

the Fourth and Fourteenth Amendments by conducting a search without probable

cause and seizing a large amount of currency without affording him due process of

law.  Defendants move to dismiss the claims against the City and Police

Department because Black has not sufficiently alleged the elements of a municipal

liability claim in accordance with Monell.  Defendants also argue that Black cannot

maintain his Fourth and Fourteenth Amendment claims because the search was

6

conducted pursuant to a search warrant based upon probable cause. The court will address these issues *seriatim*.

## A. Municipal Liability

Defendants assert that Black has not set forth sufficient factual allegations to sustain a section 1983 claim for municipal liability against the City and Police Department. Under 42 U.S.C. § 1983, municipal defendants cannot be held vicariously liable for the actions of their employees or agents under a theory of *respondeat superior*; municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) ("District courts must review claims of municipal liability independently of the section 1983 claims against the individual police officers.") (internal quotation omitted).

To establish liability under Monell, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir.1990) (quoting, in part, Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). A custom is formed when the "practices of

7

state officials [are] so permanent and well settled as to virtually constitute law." Id. (internal quotation omitted). A plaintiff also may establish a custom by evidence of knowledge or acquiescence in a pattern of constitutional violations. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989); see Beck v. City of Pittsburgh, 89 F.3d 966, 971-76 (3d Cir. 1996) (finding that numerous complaints of officer's propensity for violence could establish a municipal custom of tacitly approving the use of excessive force).

In the instant matter, Black does not satisfactorily allege the elements of a Monell claim. The complaint is entirely devoid of any facts that identify a municipal policy or custom to support a claim of unlawful search and seizure. See Kriss v. Fayette Cnty., 504 F. App'x 182, 187 n.2 (3d Cir. 2012) ("[P]laintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy or custom that caused the plaintiff's injury.") (internal quotation omitted); Briston v. Cnty. of Allegheny, No. 2:08-CV-1380, 2011 WL 635267, at *6 (W.D. Pa. Feb. 11, 2011) (The "inability to advance facts sufficient to identify an existing policy . . . precludes the ability to establish Monell liability"). Black simply asserts that the City and Police Department should remain listed as defendants because the seized currency may be in the City or Police Department's possession. (Doc. 36 at 4). The court finds this argument unpersuasive. Subsequent possession does not support an inference that the police officers unlawfully seized the currency pursuant to any municipal policy or custom. Accordingly, the court will dismiss the claims asserted against the City and Police Department.

**B.     Unlawful Search and Seizure in Violation of the Fourth Amendment**

Defendants move to dismiss Black's section 1983 claim for violation of the Fourth Amendment because defendants conducted the search and seizure pursuant to a valid search warrant.  The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV. Subject to a few narrow exceptions, a search or seizure without a warrant is unreasonable.  See Kyllo v. United States, 533 U.S. 27, 31 (2001); United States v. Whitted, 541 F.3d 480, 484 (3d Cir. 2008).  The government must secure a search warrant "issued upon probable cause and particularly describing the items to be seized."  Brown v. Muhlenberg, Twp., 269 F.3d 205, 210 (3d Cir. 2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)).  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  A search warrant must also be approved by a neutral magistrate, which is "the clearest indication that the officers acted in an objectively reasonable manner."  Messerschmidt v. Millander, 132 S.Ct. 1235, 1245 (2012); see Raban v. Butler, Civil Action No. 11-5656, 2012 WL 592328, at *3-4 (E.D. Pa. Feb. 22, 2012) ("A magistrate's determination of probable cause is entitled to great deference.").

In his complaint, Black alleges that defendants executed the search warrant and seized personal property without probable cause. (Doc. 1 ¶ 22). However, the factual allegations in the complaint clearly demonstrate that the search warrant and subsequent seizure were based upon probable cause. The application for the search warrant included a sworn Affidavit of Probable Cause from Detective Heffner. (Id. ¶¶ 7, 15). The Affidavit of Probable Cause described an interview with a witness, Ms. Brittany Harris, who allegedly had knowledge of the stolen police gun. (Id. ¶¶ 7, 10-11). According to the complaint, Ms. Harris informed Detective Heffner that she overheard Black attempting to sell a gun matching the description of the missing police gun. (Id. ¶ 13). She also provided Detective Heffner with information about Black's family and residence, suggesting personal knowledge. (Id. ¶ 12). As a result of the interview with Ms. Harris, Detective Heffner submitted the application to a neutral magistrate and received a search warrant for evidence of stolen government-issued equipment. (Id. ¶¶ 7, 15). Defendants clearly complied with the directives of the Fourth Amendment in obtaining a search warrant based upon probable cause.

Nevertheless, a search or seizure pursuant to a warrant may still be unreasonable when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Messerschmidt, 132 S. Ct. at 1245 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Black does not claim that the search warrant was facially invalid, nor does Black challenge the validity of the search warrant based on allegations that Detective Heffner and Ms. Harris made false

statements in the search warrant application.  See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (challenging the validity of a search warrant by asserting that law enforcement submitted a false affidavit to the issuing judicial officer).  Black merely asserts that the search produced no evidence of the stolen materials.  (Doc. 1 ¶¶ 16, 18).  However, the underlying basis for probable cause need not be factually correct; a reasonable mistake of fact does not violate the Fourth Amendment.  See Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990); United States v. Harrison, 689 F.3d 301, 309 (3d Cir. 2012).  Thus, the lack of evidence of stolen police equipment from the search does not negate probable cause or create an unreasonable search or seizure in violation of the Fourth Amendment.

Black further argues that the seizure of the currency was unreasonable because it was outside the scope of the search warrant.  The Affidavit of Probable Cause stated that the search of Black's residence was expected to produce evidence of stolen government-issued equipment; however, Black alleges that the currency was unrelated to the crime of stolen government property.  (Doc. 36 at 4; Doc. 1 ¶ 15).  The court disagrees.  It is well-established that the government may seize evidence of the sale of contraband or stolen goods for use in investigation or at trial.  See Warden v. Hayden, 387 U.S. 294, 301-02 (1967) ("Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband.").  Therefore, the court finds that Black fails to set forth sufficient facts to support a section 1983 claim for unreasonable search and seizure.

**C.      Seizure of Property Without Due Process of Law in Violation of the Fourteenth Amendment**

In addition to challenging the initial search and seizure, Black contends that the retention of his money was an unlawful deprivation of property without due process of law.[2]  Defendants seek to dismiss this Fourteenth Amendment claim. However, both parties fail to offer any argument regarding the claim.

The due process clause of the Fourteenth Amendment offers both procedural and substantive protections against deprivations of "life, liberty, or property."  U.S. CONST. amend. XIV, § 1; see Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004).  The complaint, however, does not indicate whether Black alleges a violation of substantive or procedural due process.

Substantive due process protects only those property interests that are considered "fundamental" under the U.S. Constitution.  Nicholas v. Pa. State Univ., 227 F.3d 133, 140 (3d Cir. 2000).  The Third Circuit has generally limited non-legislative substantive due process review to cases involving real property ownership.  See, e.g., DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 600-01 (3d Cir. 1995), abrogated on other grounds by United Artists Theatre Circuit, Inc. v.

---

[2] The Fourteenth Amendment protects against forfeiture, as opposed to the Fourth Amendment, which prohibits unlawful seizure of property.  Forfeiture is the final resolution of rights over the entity or item seized.  See United States v. James Daniel Good Real Prop., 510 U.S. 43, 49-52 (1993); see also Krimstock v. Kelly, 306 F.3d 40, 48-53 (2d Cir. 2002).  In contrast, seizure is merely a temporary deprivation of an interest to preserve the status quo until formal procedures can be instituted to resolve the legal rights of the person whose rights are implicated.  See James Daniel Good Real Prop., 510 U.S. at 51-52.

Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003) ("[O]ne would be hard-pressed to find a property interest more worthy of substantive due process protection than [land] ownership."). In the instant case, Black alleges that defendants seized $42,940 in cash from his residence and deprived him of his personal property. (Doc. 1 ¶¶ 16-17, 19, 24). The court notes that the Third Circuit has not extended substantive due process protection to personal property. See Wrench Transp. Sys. v. Bradley, 340 F. App'x 812, 816 (3d Cir. 2009) (finding that a personal property interest in trucks was not "fundamental" to support a claim for substantive due process). Accordingly, the court finds that Black's interest in his personal property is not a "fundamental" interest to warrant substantive due process protection. Therefore, the court will dismiss Black's substantive due process claim.

To establish a claim for violation of procedural due process, a plaintiff must demonstrate (1) that he or she had a legally protected liberty or property interest, and (2) that the state deprived him or her of that interest without due process of law. Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1293 (3d Cir. 1993); Pappas v. City of Lebanon, 331 F. Supp. 2d 311 (M.D. Pa. 2004). Generally, due process "requires that a deprivation of property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 680 (3d Cir. 1991), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003) (quoting, in part, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

However, prior to asserting a procedural due process claim, a plaintiff must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see Zinermon v. Burch, 494 U.S. 113, 126 (1990) (stating that a procedural due process claim is not actionable "unless and until the State fails to provide due process"). For example, the existence of an adequate post-deprivation remedy under state law may be a successful defense to a procedural due process claim. See Parratt v. Taylor, 451 U.S. 527, 541 (1981) (holding that a procedural due process claim against a state official in his or her personal capacity may not proceed if an adequate post-deprivation remedy exists for negligent deprivation of property); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (expanding the Parratt rule to intentional deprivations of property by a state employee); Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-37 (1982) (finding that Parratt does not extend to claims against a state official in his or her official capacity for deficient state procedures).

Black sufficiently alleges that he was deprived of personal property when police officers seized $42,940 from his residence. (See Doc. 1 ¶ 22.) Black also indicates that he availed himself of state court processes in an attempt to recover his personal property. He claims that the Dauphin County District Attorney's Office instituted a forfeiture proceeding from which he received only $28,980 out of the $42,940 seized from the search. (Id. ¶¶ 20, 25). Black further states that a state court replevin action was commenced regarding the balance of the money. (Id. ¶ 25). However, the court cannot assess the sufficiency of the complaint regarding

14

these remedies.  The complaint does not indicate whether Black seeks to challenge forfeiture procedures or hold Detective Heffner personally responsible for depriving Black of his personal property.  Nor does Black assert that the state court processes were inadequate to protect his property rights.  Therefore, the court will grant defendants' motion to dismiss with leave to file an amended complaint alleging sufficient facts for a procedural due process claim.  The court would be remiss, however, if it did not express its reservations concerning Black's ability to correct the deficiencies.  <u>See, e.g.</u>, <u>Potts v. City of Phila.</u>, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2009) (granting summary judgment on section 1983 claim for deprivation of property because Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy for a person aggrieved by a search and seizure to move for the return of the property).  Nevertheless, Black is entitled to an opportunity to decide whether the complaint may be amended to sufficiently plead a claim for procedural due process.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the court will grant defendants' motion to dismiss (Doc. 15) with limited leave to amend.

An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        December 12, 2013